and Swingle from the Department of Justice representing the United States. The issue before the court this morning and the relief that we're asking from this court on appeal is quite narrow. It's simply whether to allow the government to file an amended forfeiture complaint. All we want here is an opportunity to get in the gate. We're not asking the court to rule on the legal sufficiency of that complaint. I think the museum would be given a full opportunity to seek to move to dismiss an amended complaint. We're not asking the court to rule that our amended complaint is legally sufficient. I think both parties have urged the court not to reach that issue. Let me ask a preliminary question which seems to me important given the standard of review assuming you're not foreclosed under by Rule 59 and that is what prejudice to the government will result from affirming since the D.J. suit is pending? I'm not sure I understand your... Oh, the declaratory judgment action, Your Honor. I don't know what procedural mechanism we would have to take possession or ownership, take title of the mask in a declaratory judgment action. Why not? I mean, I don't believe that that's properly put at issue, but I also think, Your Honor, frankly, Congress has established... Wait, that's all been stayed. Your answer didn't assert that the title lies in the United States? I believe so, Your Honor, but more to the point, I think the proper mechanism for determining whether a cultural artifact has been brought into this country in violation of... You forget best procedure. Listen, we're talking prejudice because you've got, by reason of procedural mistakes, at least in the eyes of the district court, you now have to beg for a do-over. Well, did the district court abuse its discretion? I believe so, Your Honor, and although, of course, the court does have discretion to dismiss a complaint, I think this court has repeatedly recognized, as did the Supreme Court in Foman v. Davis, the federal interest reflected in the rules of adjudicating cases on the merits, the interest in giving an opportunity typically for at least one amendment of a complaint before a case is dismissed with prejudice, and of course, particularly in the ground of dismissal is one of an insufficiency of factual allegations rather than some fundamental legal defect. Obviously, I think it's particularly acute here, the problem, because, of course, one of the two grounds of insufficiency identified by the district court in its dismissal order was something that had not been briefed by the parties, had not been argued by the defendant here, it was something that was raised only by the district court sua sponte, and so the What is that issue? The issue that the complaint would need to allege that the importation or export of the property was contrary to law, that there be not only allegations establishing that the mask was stolen, but in addition, separate allegations establishing this contrary to law, that part of the court's ruling was based on a Second Circuit decision that actually postdated the motion to dismiss briefing in this case, and a case and a proposition that had never been argued by the museum in its motion to dismiss in any way. They had identified separate grounds, both the insufficiency of the allegations that the property was stolen, and then some latches and timeliness grounds. Well, when do the facts come out about this company in Switzerland? Phoenix Art. Which has a cloudy past, I gather. Right. If I may, Your Honor, I'm not aware of precisely when the government learned information about all of what was included in the amended complaint. Obviously, in the government's view, our preference was to attempt to reach a mediated solution to this dispute, as I think the declaratory judgment action reflects. The government was in negotiations with the museum, had not filed a forfeiture complaint, was attempting to work jointly with the museum and the government of Egypt to try and reach a solution, and it was the museum that precipitated a judicial intervention by following the declaratory judgment motion, and it was only at that time that we filed the first forfeiture complaint. The investigation was ongoing, and certainly we learned additional information over the But as Your Honor pointed out, yes, it is correct that the amended complaint preferred by the government in tandem with its later motion did allege, for example, that the company from which the museum purchased the mask, Phoenix Arts, was owned by two brothers who actually, if one looks at the sale agreement, individually affirmed that they would be responsible for their obligations under the sale agreement. One of them was convicted in Egypt of illegal export of cultural artifacts. A second actually pleaded guilty in a U.S. court to illegal importation of stolen property. So this, as I recall, this disappeared from Egyptian control about 10 years after it had been discovered, is that right? It's not entirely clear, Your Honor. It was discovered in, I believe, 1952, 1953. The Egyptian records document its possession and whereabouts up until at least sometime between the mid-'60s and early-'70s. By 1973, it was discovered not to be in the possession, apparently, of the Egyptian government. So there certainly is some uncertainty about precisely what the chain of custody is. What we know is that, by the way- Well, it wasn't in the box. It was not in the box, Your Honor. Which does not mean it wasn't in the possession of an Egyptian official. What we do know, Your Honor, is that under Egyptian law, all artifacts discovered after 1951 belonged to the Egyptian government, although that law, as we allege in our amended complaint, set out limited exceptions to that rule. None of those exceptions applied here. There were no records that the Egyptian government had sold or otherwise dispossessed itself of the mask. There were no records that would show that the mask had been properly exported from Egypt, which would have been a requirement. They would have had to have gotten a permit to do that. That was not done. We know that by the late 1990s, Phoenix Art had possession of the mask. We know that it sold that mask along with a provenance that purported to show the mask in private ownership by the early 1950s, which, as we know, is flatly contrary to the records in the hands of the Egyptian government. Certainly, the Egyptian government here believes that the mask is stolen, and we think those allegations, certainly on their face, were highly responsive to the perceived defects identified by the district court. And all we're asking for is to have the chance to go back to the district court so that it, in the first instance, can determine whether those are legally sufficient to state a claim under the burden for- Counsel, when did the government ask for permission to file an amended complaint? Well, I think that it's difficult to answer, Your Honor, because I think our position is we did so repeatedly, or at least we made clear to the court repeatedly. More than twice? So if I may, Your Honor, when the district court's initial dismissal order was issued, and of course, it did not say whether it was with or without prejudice, the government immediately went to the court within, I think, four or five days at a time when one lead counsel was in the midst of a multi-week trial and the other lead counsel was out on maternity leave. They immediately went to the court and said, we want to seek reconsideration. Will you please extend the time for us to do that? But we also think we might, if this is final, because we don't know if it's final, we might want to amend the complaint. You know, you don't usually issue a dismissal order with prejudice. You usually give at least one chance to amend the complaint. Let us do that. The district court granted the motion for the extension, made no motion or made no kind of description or response to whether or not its initial order was final. The government then moved for reconsideration, both in its initial motion and its in reply brief in support of that motion. The government explained in the alternative that it wanted an opportunity to amend. It gave some specific examples of what it could add in an amended complaint. The district court denies that, makes no mention again of amendment, does not respond in any way to these new allegations. And then at that point, the government promptly filed, again, a motion under Rule 60 this time for- Would you break it out in terms of once you were notified that your existing complaint was going to be treated as inadequate? Yes, Your Honor, and I can maybe give you a little more on rebuttal. But as I said, within, I think, four to five days after the initial dismissal order, we asked to extend and mentioned our wish to amend. We filed that reconsideration motion. I believe it was 30 days. The district court extended by 30 days. So we filed at that time, again, with no opposition from the museum. The court resolved that. And I think within a week or two, I believe, of the court's resolution of that, maybe less, the government filed, again, a motion for leave to amend with the preferred complaint. So there was some delay while various motions were pending with the district court. But in terms of our response to orders- Your response in the reply brief to the argument that there was no power to grant leave to amend without a grant of reconsideration, citing Ardorn and Cortana and the First Circuit and Acevedo, which I've read, and it's very much to that- Oh, no, we agree, Your Honor, that the court would need to grant a motion under Rule 59 or 60 to have- It had been denied. Well, the district court had denied reconsideration, making no mention of the alternative request for leave to amend. I mean, I guess one could, if, in fact, the court treated that and considered that as a denial on the merits of the alternative request for leave to amend- Of course it would. I think it fails for the same reason that the court's subsequent order fails, which is it gave no explanation for why it would deny leave to amend. I'm worried about the power argument. The court did not need to say why, to address separately the alternative, oh, and by the way, if you don't agree with us, give us a chance to amend, which lawyers say all the time and it's routinely not discussed. What I would say, Your Honor- Denied reconsideration and the authorities from Moore's federal practice on down say at this point, there is no power to grant a subsequent motion for leave to amend. What I would say, Your Honor, is to point the court, for example, to your decision for the court in Roop, where the court says, yes, a post-judgment denial of leave to amend is possible, but the court needs to look at that in light of the federal interest in deciding cases on their merits. Have you got a case that creates an exception to the no power cases? If I may, Your Honor, I am not aware of any court that holds, if a court denies a timely motion for reconsideration, it lacks the ability then under 60B to consider a subsequent motion to amend. And although my opposing counsel has cited a couple of cases, in both of those cases, the court, before denying the subsequent Rule 60B motion, identifies grounds under which, under the standards set out by the Supreme Court in Foman v. Davis, for example, the general factors that one looks to in deciding whether to amend. In those circumstances, amendment was not justified. So your final motion cited Rule 60B? We did, Your Honor. And the first motion to reconsider cited- So both of our motions cited both Rule 59 and Rule 60B because of the uncertainty in the government's mind based on those early rulings, whether its initial dismissal order had intended to be a final judgment or simply a dismissal of the complaint without prejudice to leave to amend. Counsel, what's the effect of the 10 months that transpired between the time of the filing of the motion to dismiss and the dismissal that was granted in terms of considering the government's, the equity to the government for opportunity to amend? With respect, Your Honor, I think delay in seeking leave to amend certainly is a relevant factor under Foman v. Davis, but I think Foman v. Davis itself makes clear that the mere fact you don't move before a court rules on a 12b6 motion to dismiss is somehow fatal to your ability to do so. And I think here, there has never been any claim by the defendant that delay was prejudicial in any way. There's been no discovery here. There's been no summary judgment. With the exception of limited discovery relating to standing, discovery has not moved forward. Briefing has not moved forward. Things have been stayed. And here, I think it would be particularly egregious, as I earlier indicated, to fault the government for failing to move for leave to amend because, of course, one of the two defects is not something that the government was on notice. That would be a concern. It was not in the briefing by the museum, and it was ruled unsuitable. Were the words contrary to law in the initial complaint? I don't know the answer to that, Your Honor. I don't see how you could do a Rule 12 under these strict rules and not allege an obvious element to the claim. Well, if I may, Your Honor, it was obviously the government's position early in the litigation that the contrary to law was satisfied by alleging that the property was stolen. And obviously, in order to be stolen, it has to have been taken in violation of some legal restriction. We are not pressing that issue here. We accept, for purposes of the amendment, that that's a separate pleading requirement. I think that's an issue to be decided in further plenary briefing before this district court, not by this court. Thank you, Your Honors. Just on December 12, we issued a Chief Judge was the author of an opinion, Union Pacific Railroad versus Department of Homeland Security, which has quite a discussion of the constitutional doubt doctrine has been applied historically to forfeiture issues. Have you looked at that? I am not familiar with that decision, Your Honor. But again, I would just remind the court, I think both of the parties here are urging the court not to reach the merits of the legal sufficiency of the proffered amended complaint. We're just asking the court for a chance to put it on file and to get the substantive issues of the case brief before the district court. And if I could just come back to where I started, assuming that the government could assert its right to title, seizure, whatever, in defense of the declaratory judgment action, is there any prejudice to the government by this dismissal? I think there is, Your Honor. I think Congress has, in enacting the forfeiture statutes, recognized that different legal standards and different rules can apply in a forfeiture action than in a declaratory judgment action, and has given the government the benefit of those more favorable pleading and proof requirements. And I think to deny us of that based on a dismissal order without even a single opportunity to replete is really not consistent with this court's rulings or those of the Supreme Court. If I could just remind the court, our initial pleading standard in a forfeiture action is only that we have to establish reasonable grounds to think that the government at trial could establish probable cause. So it's not ownership by a preponderance of the evidence. Thank you, Your Honors. Thank you. Mr. McInerney? Morning, Your Honors. I'm Pat McInerney. I represent the St. Louis Art Museum in connection with this dispute. And judges, I'd respectfully suggest to you that I think the issue here is a little bit different than what the government suggested it is. It's really whether the government's entitled to an advisory opinion from the district court with the help of defense counsel here as to what the proper pleading elements are for their claimant of the terror fact, because that's really what they want. What the government's asking is that Rule 59 and 60 be set aside, and that for the first time in this circuit where there has not been a victory on a 59 or 60 motion, they still be allowed to file their motion for leave to file their First Amendment complaint. It's never happened in this circuit before, but they're requesting with language such as the Ninth Circuit Davis case that an exception be made. And it's inappropriate, I'd suggest to this court, to make that kind of an exception. One of the issues that was raised just now was whether the contrary to law issue came up and whether it was pled, and the government's position has been that this was a new element, not briefed by the parties, but injected by the district court. The fact of the matter is, if you take a look, and I'd urge you to take a look at how the district court phrased this, the district court did nothing more than pull out the element of the statute of 1595 itself that provides that the government must show that the object, whatever it is, entered the country contrary to law. This wasn't some new formulation of the statute. This wasn't a new application of case law. This was the district court recognizing exactly what the statute requires in order to make a claim under the Tariff Act. The, what the government, I believe judge, judges had- I'm not sure you said that right about the statute. With regard to 15- Yeah, it is. Okay, it's the introduction that's contrary to law. It is, that's right. Not the, it doesn't matter whether it's stolen, in other words. Not on that element, it doesn't matter whether it's stolen. Introduction has to be contrary to law, right. And that's always been there. So just alleging this was originally a stolen item does not address that element of the statute. That's true, right. And what the district court recognized on the stolen issue, judge, was that very simply the allegation that it was one place at one time and showed up at another place at another time doesn't equal theft. In fact, as we suggested in the brief, in order to get to theft in the first place, you have to get to ownership. And what the government alleged in the initial complaint, and quite frankly, although as you know, we're urging you not to pay any attention to the proposed first amended complaint, they don't get there in that complaint either. They still can't show that the item was ever owned by the Republic of Egypt. And their suggestion is starkly contrary to Second Circuit, which is the only circuit that's examined the issue of Egyptian antiquities. And when they were owned, their suggestion is starkly counter to Schultz in the Second Circuit. And I think that's laid out sufficiently in the briefing. What we know is that the government also was not entitled to some special explanation by the district court as to whether its order was final or whether it provided for a right to amend. The district court's order was silent on whether it was final, whether the action was dismissed, and whether the government could amend. By Cortana, Judge, that by definition is a dismissal of the complaint. It doesn't prejudice the government. It simply acts as a dismissal and as a final decision. From that point, the government could have taken this case and taken it up. They also could have suggested in a Rule 59 or Rule 60 motion how they would have satisfied, how they would have amended their complaint to make it sufficient. But instead, as you see in the record, what they did is deny and deny and deny and wait and see what the district court said. I think it's a reasonable conclusion to suggest that they were banking on the district court writing a recipe for an appropriate complaint and being allowed to do that after all this was done. Forget about 59. You concede that the district court didn't say much. I'm sorry? You concede, wouldn't you, that the district court did not say much? Judge, I think in the March 31st order, which it incorporated in the denial of the motion to reconsider and incorporated in the denial of motion to leave to amend, it laid out five pages of grounds. And then in the order that denied the motion for reconsideration, it specifically went to an absence of new evidence and an absence of mistake of law. Because what the government did, and that was an appropriate finding because what the government did is say, first, these rules don't apply to us. And second, if they apply, we met our burden. And what they tried to do, and you can see it in the record, Judge, is they tried to retool what their burden was instead of suggesting from the point of the motion to dismiss that there may have been some deficiencies. In fact, this kind of a tactic, Judge Loken, you called it balderdash en route. This kind of a tactic of waiting to see what the district court was going to do and not on notice of the deficiencies, that kind of a tactic has never sufficed in this court and has never sufficed in the Eighth Circuit. I think what the government had planned on was despite 59 and despite 60, despite losing on those, that ultimately they would be given the opportunity to amend their complaint because the factual scenario is so compelling. And because at the very last hour, in fact, 401 days after the motion to dismiss was filed, at the very last hour, they came up with what they believe to be satisfactory allegations. They still don't suffice as we addressed in our brief, but their position was that those were satisfactory allegations. Judge Murphy, you got to some of the questions that are raised about the amended complaint. In some of your questions, one of which was the importers connected with this mask and some illegality. It ought to be noted, and it was in our brief, that had absolutely no connection with this case. None whatsoever. They didn't allege it. The facts don't show it. And in fact, that post dated by four years, the acquisition of the mask. So there's this left-handed suggestion that there was some sort of misconduct in connection with the mask doesn't stand. And we addressed that in the... Well, I'd say there's nothing in the record to indicate that the museum knew about these characters in Switzerland. I think the museum had contact with the individuals in Switzerland because they were ultimately the importers or the people from whom the museum purchased the mask. But with respect to their conduct or whatever it is that the government is alleging, that's correct. The museum didn't have any knowledge of that. Was there any prejudice to the museum here? I'm sorry? Any prejudice to the museum here? I'd suggest that there is, Judge. What and how? I think that after moving to dismiss and after the district court, I think this court has repeatedly expressed a strong preference for finality and a strong preference in 12B6 issues for a higher standard post dismissal. That is, once a party is given a shot, once a party is given a chance like the government was here repeatedly, that there's a position, there's a point past which we would allow the parties to rely on the decision of the district court. Here, that interest of certainty is what I think the government asked you to set aside. So in terms of prejudice to the museum, and particularly going to Judge Loken's question about the D.J. action, the D.J. action remains after this in theory, but I think the real test here is whether- Only in theory? I think it certainly remains. It does. You think this dismissal would- No, no, no. Foreclose? No, the district court stayed that case. So that case certainly remains pending. Had the government filed an answer? No, the government's response was to file this action and to seek to stay the declaratory judgment action and to file a motion for seizure. So does the state preserve their right to timely answer? Yeah, I think it does. Yes, I do. And the answer could use the forfeiture statute as an affirmative defense? In what respect? Well, that your claim loses because the government has a right to forfeit. Oh, I think that's- Okay, I understand what you're saying. I think that's the basis of any kind of a responsive claim they may make. What we haven't gotten to is everything that we teed up, quite frankly, in the declaratory judgment action. The latches issue, which is where that was, the statute of limitations issue. So those are separate and aside from this. But in this action, again, what the government's asking you to do is for the first time ever to allow this late, late, late motion for leave to file a First Amendment complaint. And we suggest, judges, that it's starkly counter to what this court has ever done before. So I see my time's expired. If there are no other questions, thank you for your consideration. Very good. Thank you. Does Ms. Swinkle have some time? Counsel is out of time, Your Honor. A couple minutes for rebuttal. But, Your Honor, I have just two very short points. First, to your question, Judge Loken, about whether we could bring, as a defense, to the declaratory judgment action some complaint under the forfeiture statute. I assume that my opposing counsel would argue that that is race judicata. And just to remind the court, the nature of the two actions really is different. This is an in rem action against the mask itself. So I think there may well be some procedural hurdles to our attempts to invoke similar rights in that separate action. And then, Judge Smith, just to answer your question about the timeline, the district court's dismissal order was entered on April 2nd. Four days later, we sought an enlargement of time. That was granted on April 9th. May 7th, we moved to reconsider and asked in the alternative for an opportunity to amend. That was ruled on June 1st. And June 8th, we filed the motion for a leave to amend with a preferred amended complaint. So in each instance, we're talking about a matter of a handful of days before we took action. And if the court has no further questions, we would ask the court to reverse. Thank you, counsel. The case has been well briefed and argued and interesting, important. We'll take it under advisement.